02CV761 Exh 1+2

# 1



DEPARTMENT OF HEALTH & HUMAN SERVICES

CENTERS FOR MEDICARE & MEDICAID SERVICES

Division of Medicaid and State Operations

Region I
JFK Federal Building
Government Center
Boston, MA 02203

June 21, 2001

Patricia Wilson-Coker, Commissioner
Department of Social Services
25 Sigourney Street
Hartford, Connecticut 06106-5033

Attention: Barbara Fletcher

Dear Ms. Wilson-Coker:

We are pleased to forward a copy of approved State Plan amendment 01-002. This amendment implements the prospective payment system (PPS) for Federally Qualified Health Centers (FQHC) required under Section 702 of the Medicare, Medicaid and State Child Health Insurance Program Benefits Improvement Act (BIPA). This amendment was approved on June 21, 2001, and is effective January 1, 2001.

Because Congress allowed only a short lead-time for implementation of the PPS (BIPA passed in late December 2000, but is effective January 1, 2001), the Centers for Medicare and Medicaid Services (CMS), formerly known as the Health Care Financing Administration, notified states that a placeholder amendment would be acceptable. The placeholder would protect the January 1, 2001 effective date for federal match purposes while the states calculated the PPS rates.

Of the six states in CMS's Region I (New England), New Hampshire submitted a placeholder amendment. Maine, Rhode Island and Vermont are making interim payments under PPS, still finalizing their reimbursement methodology. The Massachusetts amendment describes an alternative methodology. Because your Department chose to implement PPS, the Regional Office reviewed your plan amendment against the requirements in Section 702 of BIPA.

During the Regional Office review of your amendment, the Connecticut Primary Care association (CPCA) and other stakeholders raised a number of questions. Specifically, there was concern that BIPA requires the Department to use Medicare FQHC regulations and Office of Management and Budget (OMB) Circular A-122 in determining payment rates. We point out that Section 702 of BIPA defines PPS and does not specifically require exclusive application of the Medicare regulations. In addition, OMB circular A-122 governs cost reporting principles for non-profit recipients of federal grants. That is, this circular applies to the grant the health centers receive from the Health Resources and Services Administration. The payment for medical services made to health centers by the Department of Social Services is not a grant, and therefore does not come under OMB Circular A-122.

Page 2 – Patricia Wilson-Coker, Commissioner

We appreciate the Department's assurance that, if further guidance from CMS requires modifications to the approved methodology, it will adjust its current FQHC payment methodology as applicable.

Should you have any questions, please call Richard Pecorella at (617) 565-1244, or Harold Finn at (617) 565-1225.

Sincerely,

*Margaret A. Leoni*

Margaret A. Leoni
Chief, Medicaid Program Branch

Enclosure

DEPARTMENT OF HEALTH AND HUMAN SERVICES  00761-CFD    Document 41-3    Filed 12/29/2003    Page 4 of 9
HEALTH CARE FINANCING ADMINISTRATION

FORM APPROVED
OMB NO. 0938-0193

# TRANSMITTAL AND NOTICE OF APPROVAL OF STATE PLAN MATERIAL

**FOR: HEALTH CARE FINANCING ADMINISTRATION**

| | |
|---|---|
| 1. TRANSMITTAL NUMBER: 01-002 | 2. STATE: CT |
| 3. PROGRAM IDENTIFICATION: TITLE XIX OF THE SOCIAL SECURITY ACT (MEDICAID) | |

**TO:** REGIONAL ADMINISTRATOR
HEALTH CARE FINANCING ADMINISTRATION
DEPARTMENT OF HEALTH AND HUMAN SERVICES

**4. PROPOSED EFFECTIVE DATE:** January 1, 2001

**5. TYPE OF PLAN MATERIAL** *(Check One)*:

☐ NEW STATE PLAN  ☐ AMENDMENT TO BE CONSIDERED AS NEW PLAN  ☒ AMENDMENT

COMPLETE BLOCKS 6 THRU 10 IF THIS IS AN AMENDMENT *(Separate Transmittal for each amendment)*

**6. FEDERAL STATUTE/REGULATION CITATION:** Public Law 106-554 (BIPA)

**7. FEDERAL BUDGET IMPACT:**
a. FFY 2001  $ 160,000
b. FFY 2002  $ 421,000

**8. PAGE NUMBER OF THE PLAN SECTION OR ATTACHMENT:**
Attachment 4.10B
Page 1(b)

**9. PAGE NUMBER OF THE SUPERSEDED PLAN SECTION OR ATTACHMENT** *(If Applicable)*:
Attachment 4.19B
Page 1(b)
TN 94-010

**10. SUBJECT OF AMENDMENT:**

Payment Method for Federally Qualified Health Centers

**11. GOVERNOR'S REVIEW** *(Check One)*:

☐ GOVERNOR'S OFFICE REPORTED NO COMMENT
☐ COMMENTS OF GOVERNOR'S OFFICE ENCLOSED
☐ NO REPLY RECEIVED WITHIN 45 DAYS OF SUBMITTAL
☒ OTHER, AS SPECIFIED:

**12. SIGNATURE OF STATE AGENCY OFFICIAL:** [signature]

**13. TYPED NAME:** Michael P. Starkowski

**14. TITLE:** Deputy Commissioner

**15. DATE SUBMITTED:** March 29, 2001

**16. RETURN TO:**
Barbara Fletcher
Department of Social Services
Medical Administration
25 Sigourney Street
Hartford, CT 06106

---

**FOR REGIONAL OFFICE USE ONLY**

**17. DATE RECEIVED:** March 29, 2001

**18. DATE APPROVED:**

PLAN APPROVED – ONE COPY ATTACHED

**19. EFFECTIVE DATE OF APPROVED MATERIAL:** January 1, 2001

**20. SIGNATURE OF REGIONAL OFFICIAL:** [signature]

**21. TYPED NAME:** Ronald Preston

**22. TITLE:** Associate Regional Administrator
Division of Medicaid and State Operations

**23. REMARKS:** Please note that block 8 should read "Attachment 4.19B" rather than 4.10B [illegible]

FORM HCFA-179 (07-92)    *Instructions on Back*

Attachment 4.19B
Page 1(b)

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
STATE   CONNECTICUT

---

(9) Clinic services - Fixed negotiated fee per visit or service with three exceptions:

    (a) Federally Qualified Health Centers rates are set according to the Regulations of Connecticut State Agencies, governing community health centers (Attached Page 1(b) Addendum). The rate setting methodology conforms to the prospective payment system under the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act (BIPA) of 2000.

    (b) For the purpose of establishing the amount to be paid by the department for services provided at Federally Qualified Health Centers to Medicaid recipients enrolled in managed care in accordance with section 4712(b)(2) of the Balanced Budget Act of 1997, such payments shall be calculated as the difference between the rates as described in subsection (a) above and the amount of reimbursement for the same service received by the Federally Qualified Health Center from the managed care organization.

    (c) Clinic may choose to file cost and statistical data which is used to negotiate that clinic's fixed fee visit.

(10) Dental services (including dentures) - Fixed negotiated fee schedule.

(11) Physical therapy and related services - Fixed negotiated fee schedule.

(12) Prescribed drugs and prosthetic devices; and eyeglasses prescribed by a physician skilled in diseases of the eye or by an optometrist whichever the individual may select.

---

TN # 01-002
Supersedes
TN # 94-010          Approval Date 6/21/01          Effective Date 01/01/01

medically underserved populations as demonstrated by a designation as a Federally Qualified Health Center or look-alike by the Federal Health Care Financing Administration.

(9) "Department" means the Department of Social Services.

(10) "Full-time Equivalent" means the total number of hours paid for the year divided by 2,080.

(11) "Imputed Primary Health Services Visits" means the minimum number of visits based on the following standards which are assessed as visits per full time equivalent, provided such a standard may be waived based on a CHC demonstrating a reasonable justification for such waiver in accordance with the process established for a request for reconsideration under section 17b-262-665 of the Regulations of Connecticut State Agencies:
- 4,200 visits per full time equivalent for the services of physicians
- 2,100 visits per full time equivalent for the services of physician assistants
- 2,100 visits per full time equivalent for the services of nurse practitioners

(12) "Per Visit Rate" means the rates established pursuant to the Regulations of Connecticut State Agencies sections 17b-262-661 to 17b-262-669, inclusive, to reimburse Community Health Centers for primary health service, including supplemental health services, and mental health service and dental service for eligible Title XIX recipients.

(13) "Primary Health Services" means services of physicians, physicians' assistants, nurse practitioners, and other allied health professionals, for the ongoing, continuous or repetitive management of a patient's health care including services and supplies and the overall coordination of all services provided to the patient. Services include, but are not limited to:
  (1) first-step management for acute patient problems and follow-up management of current problems including emergency medical services;
  (2) chronic disease management;
  (3) health education;
  (4) nutrition counseling;
  (5) preventive health services (including perinatal services and well child services);
  (6) medical social work services (including counseling, outreach, referral for assistance, and follow-up);
  (7) women's health services;
  (8) family planning services;
  (9) diagnostic laboratory and x-ray (where such services are not independently certified);
  (10) transportation as required for primary care visits (where such transportation is furnished by the health center).

(14) "Projected Health Service Grants and Contributions" means the anticipated grants and contributions for the rate period following the annual report period.

(15) "Public Health Service Grants" means funds awarded to community health centers to support the cost of operation of such facilities pursuant to 42 U.S.C. 254c.

(16) "Rate Period" means the period from January 1, 2001 through September 30, 2001 and thereafter means the twelve month period from October 1 through September 30.

(17) "Service Operating Revenue" means the operating revenue attributable to each primary health, mental health or dental service category reported in the annual report.

State of Connecticut
Department of Social Services
Medical Care Administration

| MEDICAL SERVICES POLICY | MENTAL HEALTH CLINICS 171.1F.III. - 171.1G.I. |
|---|---|

III. Authorization Procedure

The procedure or course of treatment must be initiated within six (6) months of the date of authorization.

    a. Form W-626 "Authorization Request for Professional Services" is used to obtain prior authorization and is submitted to

        Department of Social Services
        Utilization Review Unit
        25 Sigourney St.
        Hartford, Connecticut 06106-5033

    b. Requests for services requiring prior authorization must include the progress made to date and the future gains expected through additional treatment. Services will be authorized up to six (6) months.

    c. Each request for continued treatment beyond the initial period as authorized by the Department will require a new authorization request to be submitted to the Department using Form W-626 and must include the progress made to date and the future gains expected through additional treatment. Extension of services beyond the initial authorization period will be up to six (6) months.

    d. <u>All</u> treatment request forms must include the name of the physician and/or agency making the referral.

    e. Requests for authorization of treatment must be submitted and approved <u>prior</u> to the onset of services for which authorization is requested.

G. Other

    I. A psychiatrist who is fully or partially salaried by a clinic may not receive payment from the Department unless the psychiatrist maintains an office for private practice at a separate location from the clinic.

    Psychiatrists who are solely clinic-based either on full time or part time salary are not entitled to payment from the Department for services rendered to Title XIX recipients. Services are billed by the provider clinic.

    Psychiatrists who maintain an office for private practice separate from the clinic, may bill for services provided by the psychiatrist to his private practice patient at the clinic. If the patient is also a clinic patient, the physician may bill for private practice services only if the services are not provided for in the Department's clinic payment rate.

State of Connecticut
Department of Social Services
Medical Care Administration

| MEDICAL SERVICES POLICY | REHABILITATION CLINICS 171.2B. - 171.2B.IV. |
|---|---|

B. Definitions

I. Rehabilitation

"Rehabilitation" means the process of restoring an individual to useful life, who has been ill or, who is handicapped and has a potential for improvement.

II. Rehabilitation Services

"Rehabilitation Services" means medical and remedial services provided to an outpatient, the purpose of which is the maximum reduction of physical or mental disabilities and restoration of eligible recipients to their best possible functional level. The services are performed under the direction of a licensed physician (M.D.).

III. "By or under the direction of a physician"

"By or under the direction of a physician" means a free-standing rehabilitation clinic's services may be provided by allied health professionals, including audiologists, speech pathologists, physical therapists, occupational therapists, and other medical staff whether or not a physician is physically present at the time that medical services are provided.

The physician

a. must assume professional responsibility for the services provided;

b. must assure that the services are medically appropriate, i.e., the services are intended to meet a medical or medically-related need, as opposed to needs which are clearly only social, recreational or educational;

c. need not be on the premises, but must be readily available, meaning within fifteen (15) minutes.

IV. Medical and Remedial Services

"Medical and Remedial Services" mean those services ordered by or under the direction of a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law and required for the diagnosis and treatment of some physical, psychiatric or psychological problem which affects the health of an individual.

State of Connecticut
Department of Social Services
Medical Care Administration

---

MEDICAL SERVICES POLICY

REHABILITATION CLINICS
171.2B.V. - 171.2B.IX.

---

V. Functional Therapy

"Functional Therapy" means a short term therapeutic rehabilitation program of which the major component is the treatment of a medical and/or psychological condition of disabled or handicapped adolescents or adults who have been determined to have <u>no vocational objective</u>. The program is individually planned and coordinated and includes participation in work activity services concurrent with the medical services and is designed to enhance the individual's daily living skills. The work activity services are provided in a medical sheltered workshop facility which performs such service.

VI. Speech Pathology Services

"Speech Pathology Services" means the application of principles, methods and procedures for the measurement, testing, diagnosis, prediction, counseling or instruction relating to the development and disorders of speech, voice or language for the purpose of diagnosing, preventing, treating, ameliorating or modifying such disorders and conditions. Services are provided by a speech pathologist.

VII. Speech Pathologist

"Speech Pathologist" means a person who is licensed to practice speech pathology under Chapter 399 of the State Statutes.

VIII. Audiological Services

"Audiological Services" means the application of principles, methods and procedures of measurement, testing, appraisal, prediction, consultation, counseling and the determination and use of appropriate amplification related to hearing and disorders of hearing, for the purpose of modifying communicative disorders involving speech, language, auditory function or other aberrant behavior related in hearing loss. Services are performed by an audiologist.

IX. Audiologist

"Audiologist" means a person who is licensed to practice audiology under Chapter 399 of the State Statutes.