### b. Calculation of the Per-Visit Rate for FQHC's

42 U.S.C. § 1396a(bb) does not specify how the per-visit rate for FQHC's is to be calculated, except that the FQHC is entitled to be reimbursed 100% of its costs that are reasonable and related to the cost of furnishing such services. In determining what costs are reasonable and related to the cost of furnishing services, the Second Circuit Court of Appeals granted considerable deference to CMS's interpretation of federal Medicaid statutes and regulations. In <u>Community Health Center v. Patricia Wilson-Coker</u>, 311 F.3d 132 (2002), the Court of Appeals held that 42 U.S.C.§ 1396a(bb)(2) was sufficiently ambiguous with regard to the meaning of the words "reasonable and related" so that it was appropriate to afford CMS deference as to its interpretation of these words in the context of the Medicaid statute at issue. The Court stated:

> CMS...urges us to conclude that in the absence of contrary regulations, 'States have broad authority to define reasonable costs for purposes of their Medicaid payments to FQHC's...In resolving this ambiguity, we owe some significant measure of deference to CMS's interpretation of the statute, although we need not decide the exact molecular weight of the deference we accord to CMS's position...[W]e therefore accord CMS's interpretation considerable deference..CMS's interpretation is a reasonable reading of an unclear statute...Medicaid, as we have said, is designed as a cooperative venture between States and the federal government. Absent some indications to the contrary, therefore, we presume that a given Medicaid provision is designed to encourage State flexibility...[A] reasonable reader, applying this interpretive guide to § 1396a(bb), might well conclude that in the absence of any federal definition of 'reasonable and related', the States have some freedoms to adopt their own approaches.

<u>Community Health Center, Inc. v. Wilson-Coker</u>, 311 F.3d at 137-39.

In the above referenced appeal, the defendant Department of Social Services had established a minimum visit standard (known as a productivity screen) to reduce the plaintiff's Medicaid payments. The plaintiff filed an action for injunctive relief, claiming that the

14

productivity screen was violative of 42 U.S.C.§ 1396a(bb). The District Court held for the plaintiff and the Court of Appeals reversed, holding that the State was entitled to exercise some flexibility in defining reasonable costs for purposes of their Medicaid payment to FQHC's. In this case, the Department has determined that the plaintiff has already been compensated for the costs of case management services as said costs are included in the rate calculations. The parties are in agreement on the basic rate calculation: the payment rate is calculated, in general, by dividing the FQHCs's total allowable costs (which would include the cost of case management services) by the number of total visits for FQHC services. Until January of 2001, the plaintiff had filed cost reports with the Department which itemized the costs incurred by the FQHC for a given fiscal year. In reports filed with the Department for the periods July 1, 1998 to June 30, 1999, the plaintiff claimed a net expense of case manager/therapist expenses of $54,464.00 (Exhibit 6). These costs were not disallowed. Similarly, for the period July 1, 1999 to June 30, 2000, the plaintiff claimed a net of expense of $75,049 for case manager/therapist expenses. These costs were also not disallowed (Exhibit 7). These costs were incurred during the period of the audit in question, specifically January 1, 1999 to December 31, 2000. The plaintiff, as well as other FQHC's, were issued rate letters, which would indicate what rates they would be paid and for what period of time. Exhibits 8 and 9 are the rate letters issued to the plaintiff for the period April 1, 1999 through March 31, 2000, and April 1, 2000 through March 31, 2001. The letters indicate that the rates have been calculated pursuant to Regs. Conn. State Agencies § 17-134d-70 through 78, which was the forerunner to § 17b-262-661 through 669.

    Section 17-134d-71, entitled "Submission of annual reports" states in pertinent part:

(a) ....'[e]ach Community Health Center, hereafter called 'CHC', shall submit its annual report in a form and manner prescribed by the Commissioner.

>(b) The annual report shall cover the period July 1 to June 30 immediately preceding the filing date and shall be used to determine Title XIX rates effective April 1.

Based upon the foregoing, the plaintiff was in fact paid for its costs for case management services, as said costs were included in cost reports for the period which is the subject of the audit adjustment in question. As reflected by the cost reports themselves, a part of the plaintiff's rate calculation for fiscal year ending June 30, 1999 and June 30, 2000 contained the costs for the services of its case manager as well as a therapist (Exhibits 6 and 7). Based upon the formula, the plaintiff's overall costs are divided by the total number of per patient visits. A visit, however, is limited to an actual encounter between a patient and a health care practitioner, as has been defined by federal law and state regulations. To allow the plaintiff to include the cost of case management services in their rate, and then separately bill the Department each time a person met with a case manager would result in the plaintiff being paid over and above their "reasonable and related" costs (Affidavit of Kathleen Shaunghnessy, Principal Cost Analyst, Department of Social Services as Exhibit 10).

Plaintiff in its Memorandum of Law in Support of its Summary Judgment motion incorrectly states that the Department's regulations authorize case management services as visits (See Local Rule 9 (c)(1) Statement, p. 10). Specifically, plaintiff states that subparagraph (13) which addresses "Primary Health Services" states that such services include (1) first-step management for acute patient problems and follow-up management of current problems including emergency medical services; and (6) medical social work services (including counseling, outreach, referral for assistance, and follow-up). Plaintiff fails to address the most critical regulatory language, which is subparagraph (4), "Billable Service Visits", which "means a face-to-face encounter between a patient and health practitioner." "Visits" for which the

16

plaintiff and all other FQHC's are paid are limited to encounters with health practitioners, such as physicians, psychiatrists, psychologists, psychiatric nurse, psychiatric social workers, and allied health professionals, provided they are acting by or at the direction of a physician or psychiatrist.

The Department does not dispute that the plaintiff is entitled to receive compensation for its case management costs. In fact, the Department contends that it does in fact receive such compensation by virtue of the inclusion of such costs in its overall rate. Accordingly, the defendant is not in violation of 42 U.S.C. § 1996a(bb).

c. **The Plaintiff Improperly Billed the Department for Psychotherapy Services as the Case Manager Was Not Qualified To Perform Such Services**

In addition to seeking reimbursement for "visits" with case managers, the Department also adjusted the audit on the grounds that it was improperly billed for the provision of psychotherapy services.

Attached to the final audit as Exhibit I is the Schedule of Audit Exceptions. This document contains the names of three of the facility's clients who were seen by a case manager in the year 2000 (Exhibit 4). Plaintiff indicated a procedure code of "C2190Y", which is the code of Individual Therapy or psychotherapy, as reflected on the rate letters provided to the plaintiff by the Department (Exhibits 8 and 9). Through discovery, plaintiff indicated that Ms. Sue Douville provided the case management services at issue.

Ms. Douville indicated that she was first hired as a homeless outreach specialist by the plaintiff in February of 1998 (Exhibit 11, p. 17). In March of 1999, she was promoted to the position of case manager for the plaintiff's office in Middletown, Connecticut (Exhibit 11, p 19). She was then promoted to the position of Intensive Case Manager for the Homeless/Mentally Ill (Exhibit 11, p. 9). She described her position as case manager as one involving rapport

building with her clients; providing them with transportation to enable them to keep appointments; assisting them with some of their activities of daily living, such as grocery and laundry; helping them to maintain their homes; and helping them to connect with resources in their community (Exhibit 11, pp. 20-21). Ms. Douville indicated that she was not licensed or trained to provide any type of therapy to these clients, not did she do so (Exhibit 11, p. 25). Ms. Douville testified further on this matter as follows:

> Q: Generally, who were the folks who were providing this therapy, and what types of therapy are you making reference to?
> A: The therapists up at the mental health department, or whatever therapy--- mostly when we were serving our clients, it was CHC's mental health. But a lot of times we would have Middlesex Mental Health providing therapy. They had a therapist and then they had a primary psychiatrist who did the medication management....
> Q: So there were licensed therapists who worked for CHC?
> A: Yes, most definititely.
> Q: And there are also licensed medical doctors, who were psychiatrists, also working for CHC?
> A: Yes...
> Q: But let me just ask, do you recall the types of therapy that were being provided to clients?
> A: No.
> Q: Because you weren't licensed to do that?
> A: No.
> Q: If anyone was receiving psychotherapy, who would be the person who would be providing that on the staff?
> A: That would be the mental health providers.

(Exhibit 11, pp. 23-25). Ms. Douville further testified that the mental health providers she made reference to were Dr. Allan Stebinger, a psychologist; and Ms. Jane Bouvier, a licensed clinical social worker. As far as her role as a case manager, Ms. Douville stated "[w]e provided supportive listening. **That was the extent of what a case manager did**" (Exhibit 11, pp. 24-26)(emphasis added). Ms. Douville was shown a job description for the case manager position. She indicated that "[a]t one time the position was therapist/case manager, but then they separated the two positions" (Exhibit 11, pp. 28-29)(see also a copy of Deposition Exhibit #4,

18

which is the job description for Clinical Case manager for Homeless Mentally Ill, marked as Exhibit 12). Under Section IV, Significant Job Responsibilities, ¶ 3, it states "on-going therapy with patients who accept mental health services." When Ms. Douville was asked whether this job description fairly characterized what her job duties were while employed by CHCI, she testified "No, I didn't do ongoing therapy with patients who accept mental health services" (Exhibit 11, pp. 29-30).

Ms. Douville further testified regarding the services she provided to the three clients referenced on the Schedule of Audit Exceptions. Ms. Douville stated that, concerning the client "C.L." she was providing him with ongoing support in the community, but not with therapy. Dr. Stebinger provided him with therapy (Exhibit 11, pp. 43-44). Concerning the client "J.O.", he provided him help with maintaining his home, budgeting and developing social networks. However, she did not provide him with any type of therapy (Exhibit 11, pp. 44-49). Concerning the client "S.S.", Ms. Douville stated that Jane Bouvier provided therapy, while she provided case management services. She also made it quite clear that "it's a case management service plan. It's not a therapeutic service plan…[I]t was to complement the therapy…[B]ut the case management is not therapy.." (Exhibit 11, p. 60).

In conclusion, Ms. Douville indicated that she was neither licensed nor trained as a psychologist, psychiatric social worker or a psychiatric nurse during the time she was employed by the plaintiff (Exhibit 11, pp. 75-76). She also indicated that she was not providing her case management services under the direction of a physician or psychiatrist but rather her supervisor, Ms. Catherine Wagner, who possessed a Doctor of Education degree but not a medical degree (Exhibit 11, pp. 56, 77).

19

The plaintiff produced additional documents in discovery which corroborate that the Department was billed for Individual or psychotherapy services for the three clients in question wherein Ms. Douville is listed as the person who supplied the service (See Deposition Exhibits 13, 14 and 15). The dates of service for the various clients match the dates of service reflected on the Schedule of Audit Exceptions, attached to the final audit as Exhibit I. This is conclusive evidence that the plaintiff in fact billed the Department for Individual Therapy or psychotherapy services, allegedly provided by Ms. Douville. Ms. Douville testified, however, that she was not qualified to provide any type of therapy and in fact did not provide therapy to these clients. As such, the Department was correct in adjusting the adjust to deduct the amount of these paid claims from future payments to the plaintiff.

## IV. CONCLUSION

The plaintiff's claim for retrospective monetary relief is barred by the Eleventh Amendment and should therefore be denied. Further, the plaintiff's claims that the adjustment of its audit for the period January 1, 1999 through December 31, 2000 was violative of 42 U.S.C.§ 1396a(bb) are incorrect. The plaintiff is correct that it is entitled to be paid for the costs of the provision of case management services. However, the plaintiff is incorrect in asserting that meetings between case managers and clients are "billable visits" pursuant to state and federal law. The plaintiff is only entitled to bill the Department for "visits" between clients and health care practitioners or allied health professionals, if under the direction of a physician or psychiatrist. Further, in this case, the evidence will show that the plaintiff's rate was based in part on the costs it reported in its cost report to the Department, which listed the costs for the salary of its case manager. Hence, the plaintiff was compensated for its case management services. Finally, in this case, the evidence will show that the plaintiff incorrectly billed the

Department for therapy services when its own case manager, Douville, testified that she did not provide such services because she was not qualified to do so.

Based upon the foregoing, the defendant respectfully requests that the Court deny the Motion for Summary Judgment.

BY:

DEFENDANT
PATRICIA WILSON-COKER
COMMISSIONER
CONNECTICUT DEPARTMENT OF
SOCIAL SERVICES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

Peter L. Brown
Assistant Attorney General
Federal Bar No. 12132
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Opposition to Plaintiff's Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 29th day of December, 2003, first class postage prepaid to:

Richard R. Brown, Esq.
Brown, Paindiris & Scott, LLP
100 Pearl Street
Hartford, CT 06103

James L. Feldesman, Esq.
Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell & Bank LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036

_____
Peter L. Brown
Assistant Attorney General

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COMMUNITY HEALTH CENTER, INC. : CIVIL ACTION NO. 302CV761 (CFD)
   *Plaintiff* :
 :
v. :
 :
PATRICIA WILSON-COKER, J.D.,
M.S.W., COMMISSIONER OF THE
STATE OF CONNECTICUT,
DEPARTMENT OF SOCIAL SERVICES :
   *Defendant* : December 26, 2003

## DEFENDANT'S LOCAL RULE 56(a) 2 STATMENT

1. Paragraph 1 of plaintiff's Statement of Material Fact is admitted.

2. Paragraph 2 of plaintiff's Statement of Material Fact is admitted.

3. Paragraph 3 of plaintiff's Statement of Material Facts is admitted.

4. Paragraph 4 of the plaintiff's Statement of Material Facts is admitted.

5. Paragraph 5 of the plaintiff's Statement of Material Facts is admitted.

6. Paragraph 6 of the plaintiff's Statement of Material Facts is admitted.

7. Paragraph 7 of the plaintiff's Statement of Material Facts is admitted.

8. Paragraph 8 of the plaintiff's Statement of Material Facts is admitted.

9. Paragraph 9 of the plaintiff's Statement of Material Facts is admitted.

10. Paragraph 10 of the plaintiff's Statement of Material Facts is admitted.

11. Paragraph 11 of the plaintiff's Statement of Material Facts is admitted

12. Paragraph 12 of the plaintiff's Statement of Material Facts is admitted.

13. Paragraph 13 of the plaintiff's Statement of Material Facts is denied.

14. Paragraph 14 of the plaintiff's Statement of Material Facts is denied.

15. Paragraph 15 of the plaintiff's Statement of Material Facts is denied.

16. Paragraph 16 of the plaintiff's Statement of Material Facts is admitted.

17. Paragraph 17 of the plaintiff's Statement of Material Facts is admitted.

18. Paragraph 18 of the plaintiff's Statement of Material Facts is admitted.

19. Paragraph 19 of the plaintiff's Statement of Material Facts is admitted.

20. Paragraph 20 of the plaintiff's Statement of Material Facts is admitted.

21. Paragraph 21 of the plaintiff's Statement of Material Facts is admitted.

22. Paragraph 22 of the plaintiff's Statement of Material Facts is admitted.

23. Paragraph 23 of the plaintiff's Statement of Material Facts is admitted.

24. Paragraph 24 of the plaintiff's Statement of Material Facts is admitted.

25. Paragraph 25 of the plaintiff's Statement of Material Facts is admitted.

26. Paragraph 26 of the plaintiff's Statement of Material Facts is admitted.

27. Paragraph 27 of the plaintiff's Statement of Material Facts is admitted.

28. Paragraph 28 of the plaintiff's Statement of Material Facts is admitted.

29. Paragraph 29 of the plaintiff's Statement of Material Facts is denied.

30. Paragraph 30 of the plaintiff's Statement of Material Fact is admitted.

31. Paragraph 31 of the plaintiff's Statement of Material Fact is admitted.

32. Paragraph 32 of the plaintiff's Statement of Material Facts is admitted.

33. Paragraph 33 of the plaintiff's Statement of Material Facts is admitted.

34. Paragraph 34 of the plaintiff's Statement of Material Facts is admitted.

## **LOCAL RULE 56(a) LIST OF ISSUES OF MATERIAL FACT AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED**

1. The plaintiff listed the cost for the salary of a case manager in its cost reports filed with the Department of Social Services for the periods July 1, 1998 through June 30, 1999, and July 1, 1999 through June 30, 2000. Plaintiff's Cost Reports.

2. The cost of case management services was included in the rates provided to the plaintiff for fiscal years 1999 and 2000. Shaunghnessy Affidavit, ¶ 10.

3. The rates the plaintiff has been paid since January 2001 have included the cost of case management services. Shaunghnessy Affidavit, ¶ 12.

4. The plaintiff was issued rates for fiscal years 1999 and 2000 which did not authorize the plaintiff to bill separately for "case management" visits. Letters from Deputy Commisioner Michael Starkowski, dated May 24, 1999 and April 27, 2000, Exhibits 8 and 9.

5. Ms. Sue Douville was the case manager who provided the case management services which were the subject of the defendant's audit. Deposition Transcript, p. 17.

6. Ms. Douville was never licensed nor trained to provide therapy to FQHC clients. Deposition transcript, p. 25.

7. Ms. Douville did not provide any therapy to any of the clients listed on Exhibit I of the Department's final Audit dated October 25, 2001. Deposition transcript, pp. 43-44.

8. The plaintiff billed the Department for the provision of psychotherapy for the three clients who were seen by Ms. Douville during the audit period and claimed that Douville was the person who provided the therapy services. Deposition transcript Exhibits 10, 11 and 12.

9. Ms. Douville also testified that she was not providing these any services to these clients under the direction of a physician or psychiatrist, but rather at the direction of her

supervisor, Ms. Catherine Wagner, who possessed a Doctor of Education degree but not a medical degree. Deposition transcript, pp. 56, 77.

10. Case management services do not fall within the state's definition of "psychotherapy". Psychotherapy can be separately billed on a per patient visit basis, provided the therapy has been provided by someone qualified to provide said service. Nowhere in DSS regulations does the Department authorize FQHC's to bill for the provision of "case management" services as a separate, per patient visit. Wietrak Affidavit, ¶ 11.

12. DSS's regulations does not allow FQHC's to bill the Department for the provision of "case management services" as a separate item. Shaunghnessy Affidavit, ¶¶ 10, 12.

13. To the extent that the plaintiff has been consistently billing the Department for case management services, this has been improper. Said services are already included in CHCI's overall rate. If a case manager is licensed and trained to provide a service for which the Department has approved a particular rate, then CHCI may bill the Department for that service, not for a "case management service" visit. Shaunghnessy ¶ 12; Wietrak ¶ 9.

                                        FOR THE DEFENDANT

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL

                                        Richard J. Lynch
                                        Assistant Attorney General

BY:     _/s/ Peter L. Brown_____
                                        Peter L. Brown
                                        Assistant Attorney General
                                        Juris No. ct12132
                                        Office of the Attorney General
                                        55 Elm Street, P.O. Box 120
                                        Hartford, CT 06106
                                        (860) 808-5210 (telephone)
                                        (860) 808-5385 (fax)

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 26th day of December, 2003, first class postage prepaid to:

Richard R. Brown, Esq.
Brown, Paindiris & Scott, LLP
100 Pearl Street
Hartford, CT 06103

James L. Feldesman, Esq.
Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell & Bank LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036

Peter L. Brown
Assistant Attorney General