3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COMMUNITY HEALTH CENTER, INC<br>*PLAINTIFF* | : | CIVIL ACTION NO.<br>3:02CV761 (CFD) |
| V. | : | |
| PATRICIA WILSON-COKER,<br>COMMISSIONER<br>*DEPARTMENT OF SOCIAL SERVICES*<br>*DEFENDANT* | : | DECEMBER 26, 2003 |

### AFFIDAVIT OF JAMES WIETRAK

I, James Wietrak, having been sworn, deposes and says:

1. I am over eighteen years of age and believe in the obligation of an oath.

2. I am the Director of the Office of Quality Assurance for the State of Connecticut, Department of Social Services, and have held that position for twelve years.

3. The Department is the single state agency for purposes of administering Title XIX of the Social Security Act ("Medicaid") in the State of Connecticut.

4. One of my duties is to conduct periodic audits of Medicaid providers with regard to its paid medical claims. The audit of paid claims and the related medical and billing records are directed to a determination that: a. the services, which were billed to the Department, were actually rendered to an eligible recipient and were medically necessary; b. the billings to the Department properly reflected the services rendered by the provider; c. original documentation was maintained to evidence the performance of the services billed; and d. the provider adhered to State statutes and regulations and policy requirements promulgated by the Department.

5. In 2000, an audit was conducted of Community Health Center, Inc. ("CHCI"), which is a federally qualified health center or "FQHC". The audit of CHCI was predicated on a review of claims paid during the period from January 1, 1999 through December 31, 2000. The total Medical Assistance payments during the period amounted to $406,326.00. The examination consisted of the review of medical records supporting the services billed to the Department. It also encompassed the review of the orders by physicians for the services.

6. A sample of 93 claims paid during the audit period were reviewed. This sample was chosen by computer using a random sampling method from a total universe of 3,518 claims. Errors found in the sample were extrapolated to the universe using mean per unit estimate. The amount of error was calculated for each sample claim. The average error per sample claim was then calculated. The average error was then multiplied by the total number of paid claims to determine the extrapolated error amount.

7. In four instances of the sample claims audited, the medical records disclosed social services performed by a person other than a physician, psychiatrist or an allied health professional. In these instances, a case manager provided the services. The review of the treatment plans disclosed that a physician or psychiatrist did not sign the treatment plan. A review of the sample claims disclosed four instances wherein the Department was billed under procedure code C2190Y, which is the code for Individual therapy, also referred to as psychotherapy. A review of the medical records associated with these claims disclosed that the clients met with a case manager and not a physician, psychiatrist or an allied health professional. In addition, the records did not reveal that the case manager was acting under the direction of a physician or psychiatrist, pursuant to

the Department's Medical Services Policy for Mental Health Clinics, Section 171.1B.II.

8. Accordingly, the audit was adjusted to deduct $78,000.00 from future payments. Before the audit was finalized, my staff met with representatives from CHCI to discuss the draft audit findings. Subsequent to those discussions, we received a letter and attachments from Peter Gillis, Compliance Officer for CHCI, dated October 16, 2001. In the letter, Mr. Gillis made the point that the services provided by the case manager were "medically related" services. He also pointed out that the case managers were the "eyes and ears of the clinician, and that they functioned as part of a treatment team. He also reviewed the specific treatment of the three clients at issue. None of the case notes reveal any type of individual or psychotherapy being provided to the clients.

9. After the final audit was issued, representatives from CHCI were given an opportunity to request an informal review of the findings. Such a request was made and the review was held in December of 2000. In April of 2001, I provided CHCI with written responses to the presentation made by CHCI. I indicated that the primary reason for the adjustment was that the Department was billed for psychotherapy when social services were performed by a case manager. The medical records reviewed did not indicate that the case manager was qualified to provide such services, nor did they reveal that such services were being provided under the direction of a physician or psychiatrist in accordance with the Department's Medical Services Policy for Mental Health Clinics, Section 171.1B.II.

10. Each of the case manager's notes were reviewed and revealed that in fact no therapy was provided to the clients in question on any of the treatment dates on the billing forms filed with the Department. It did however indicate that these persons met

with a case manager and were provided with case management services.

11. The rate paid to CHCI for individual or psychotherapy includes payment for collateral services, including case management. This is clearly supported by the $115.16 payment vs. the $41.52 paid for procedure code 90806, Individual Psychotherapy – 45 to 50 minutes available to non-FQHC providers. The case management services should not have been separately billed as psychotherapy.

12. The Department refrained from recouping the $78,000.00 until the final audit was issued. By way of my April 17, 2002 letter, I informed CHCI that we would recoup this amount from future payments.

_____
James Wietrak
Director, Office of Quality Assurance
Department of Social Services

STATE OF CONNECTICUT    )

COUNTY OF HARTFORD    )

Sworn and subscribed before me on this  26TH  day of December, 2003.

_____
MCE  8-31-2007
NOTARY PUBLIC