4

STATE OF CONNECTICUT

DEPARTMENT OF SOCIAL SERVICES



AUDIT OF

COMMUNITY HEALTH CENTER, INC.

PROVIDER NO.: 4054441

MEDICAL ASSISTANCE

TITLE XIX & GENERAL ASSISTANCE

FROM: JANUARY 1, 1999

TO: DECEMBER 31, 2000

AUDIT REPORT NO.: MA-AO-02-11

PREPARED BY:
OFFICE OF QUALITY ASSURANCE
MEDICAL AUDITS

October 25, 2001

## CONTENTS

|  | Page |
|---|---|
| Introduction | 1 |
| Purpose of Audit | 2 |
| Scope of Audit | 3 |
| Audit Findings | 4-6 |
| Recommendation | 6 |
| Audit Adjustment | 6 |
| Exit Conference | 7 |

EXHIBIT I - Schedule of Audit Exceptions

EXHIBIT II - Schedule of Extrapolated Error Amount

## INTRODUCTION

The Connecticut General Assembly has enacted legislation that permits direct payment to providers of medical services when those services are delivered to certain groups of low income people. This law became effective in 1966 and enabled the State to participate in the Medicaid Program under Title XIX of the Federal Social Security Act.

Also, effective July 1, 1992, the Connecticut Department of Social Services (the Department) pays all medical bills, on behalf of the towns, for those people eligible under the General Assistance Program.

The Department is responsible for the administration of the State Medicaid Program and General Assistance Program. In addition, the Medicaid Program is partially funded by the Federal Government and must comply with the regulations of the U.S. Department of Health and Human Services. Providers enrolled in either the General Assistance Program or the Medicaid Program must comply with all Connecticut Medicaid regulations.

Reimbursement by the State for medical services provided to persons eligible for Medicaid or General Assistance is available when the services are provided in accordance with State statues and regulations and policies promulgated by the Department. The Office of Quality Assurance is the organizational unit of the Department of Social Services responsible for auditing payments to providers for claimed medical services rendered under the Medicaid and General Assistance Programs.

Providers must maintain records that accurately and completely document all services provided under these programs.

## **PURPOSE OF AUDIT**

The audit of paid claims and the related medical and billing records was directed to a determination that:

1. The services, which were billed to the Department, were actually rendered to an eligible recipient and were medically necessary.

2. The billings to the Department properly reflected the service rendered by the Provider.

3. Original documentation was maintained to evidence the performance of the services billed.

4. The Provider appropriately adhered to State statutes and regulations and policy requirements promulgated by the Department.

5. Third party insurance was properly billed and the State's liability appropriately billed and paid.

6. The Provider appropriately adhered to all terms and conditions of its Provider Agreement with the Department.

## SCOPE OF AUDIT

The audit of Community Health Center, Inc. (the Provider) was predicated on a review of claims paid during the period from January 1, 1999 through December 31, 2000. The total Medical Assistance payments during this period amounted to $406,326.00.

The examination consisted of the review of medical records supporting the services billed to the Department. It also encompassed the review of the orders by physicians for the services. The Department's files were reviewed for pertinent information as well as other related records maintained by the Provider.

A sample of 93 claims paid during the audit period was reviewed. This sample was chosen by computer using a random sampling method from a total universe of 3,518 claims. Errors found in the sample were extrapolated to the universe using mean per unit estimate. The amount of error was calculated for each sample claim. The average error per sample claim was then calculated. The average error was multiplied by the total number of paid claims to determine the extrapolated error amount (See Exhibit II).

**AUDIT FINDINGS**

1. The audit of sample claims disclosed, in two instances, where records or documentation were not provided during the conduct of the audit to substantiate a service billed to the Department. In each instance, the total paid is the audit adjustment.

    Regulations of Connecticut State Agencies, Requirements for Provider Enrollment in the Connecticut Medical Assistance Program, Section 17b-262-526 (8), states:

    > "To maintain enrollment in the Connecticut Medical Assistance Program, a provider shall abide by all federal and state statutes and regulations which govern the Medical Assistance Program and shall:
    >
    > maintain all required documentation for a least five years or longer, as specified under the provider's file subject to review by authorized department personnel. In the event of a dispute concerning goods or services provided, documentation shall be maintained until the end of the dispute or for five years, whichever is greater. Failure to maintain all required documentation shall result in the disallowance and recovery by the department of any amounts paid to the provider for which the required documentation is not maintained and not provided to the department upon request."

2. In one instance of the sample claims, a review of the Department's records disclosed a certain individual was entitled to Medicare Part B. The review of the Electronic Data Systems (EDS) Automated Eligibility Verification System (AEVS) for the individual for the date of service of the sample claim disclosed that indeed the Provider was notified that the individual was entitled to Medicare Part B. The Provider was unable to provide documentation that the service was billed to Medicare. The total amount paid is the audit adjustment. Due to an

agreement in the Department, this finding will not be included in the extrapolation. Please refer to Exhibit III for details.

Regulations of Connecticut State Agencies, Requirements for Provider Enrollment in the Connecticut Medical Assistance Program, Section 17b-262-526 (3), states:

> "To maintain enrollment in the Connecticut Medical Assistance Program, a provider shall abide by all federal and state statutes and regulations which govern the Medical Assistance program and shall: agree to pursue and exhaust all of a client's third party resources prior to submitting claims to the department for payment; to report any and all third party payments; to acknowledge the Department as the payer of last resort; and to assist in identifying other possible sources of third party liability, for which a legal obligation for payment of all or part of the Medical Assistance Program goods or services furnished exists;"

3. In four instances of the sample claims audited, the medical records disclosed social services performed by a person other than a physician, psychiatrist or an allied health professional. In these instances, a case manager provided the services. The review of the treatment plans disclosed that a physician or psychiatrist did not sign the treatment plan. The signature indicates that the physician or psychiatrist assumed professional responsibility for the services. The total amount paid is the audit adjustment.

Medical Services Policy for Mental Health Clinics, Section 171.1B.II, states:
> "By or under the direction of a physician or psychiatrist
>> By or under the direction of a physician or psychiatrist means the mental health clinic's services may be provided by allied health professionals whether or not a physician or psychiatrist is physically present at the time that medical or medically-related services are provided. The physician or psychiatrist

5

    a.    must assume professional responsibility for the services provided;

    b.    must assure that the services are medically appropriate, i.e., the services are intended to meet a medical or medically-related need, as opposed to needs which are clearly only social, recreation or educational;

    c.    need not be on the premises, but must be readily available, meaning within fifteen (15) minutes."

Medical Services Policy for Mental Health Clinics, Section 171.1B.III, states:

"Allied Health Professional

An allied health professional or paraprofessional is an individual, employed in a clinic, who is qualified by special education and training, skills, and experience in providing mental health care and treatment. Services may be provided by, but not limited, to psychologists, psychiatric nurses, psychiatric social workers, and mental health counselors."

## RECOMMENDATION

The audit findings addressed in this report require corrective action by the Provider. The Provider must take the necessary steps to ensure that all Medicaid billings and supporting documentation conform to State statutes and regulations and policies promulgated by the Department.

## AUDIT ADJUSTMENT

The total audit adjustment is $78,508.95. This amount is comprised of the extrapolation of findings #1 and #3 $78,413.00 plus the amount for finding #2 $95.95. Please refer to the attached schedules that set forth the dollar effect of the audit exception per sample claim and the extrapolation to the paid claim universe.

6

**EXIT CONFERENCE**

Details of the claims questioned were discussed with Provider representatives during the conduct of the audit and a draft audit report was sent on September 18, 2001. The post audit conference was held on October 11, 2001, attended by the following individuals:

| | |
|---|---|
| Timothy Kearney, Ph.D. | Director |
| Margaret Flinter | Vice President |
| Peter Gillies | Compliance Officer |
| Donna Frank | DSS, Supervising Accounts Examiner |
| Janet Bacon | DSS, Associate Accounts Examiner |

Additional time was granted in order to review the records at EDS concerning the AEVS number that the Provider obtained at the time of the service. In addition, the Provider obtained additional information pertaining to the issue of case managers providing services and billed to the Department as medical services. A letter dated October 16, 2001 from Mr. Gilles was reviewed and the decision was made that no changes would be made to the audit adjustment amount. The Provider representatives concurred with the audit finding #1 for sample #7, they did not concur with the remainder of the audit findings. The audit adjustment amount of $78,508.95 will be recouped from future EDS remittances. The audit adjustment amount is comprised of the extrapolated amount for findings #1 and #3, $78,413.00 and the amount for finding #2, $95.95.

**EXHIBIT I**

**Community Health Center, Inc.**

**4054441**

| Sample Number | MID | Recip | Name | Paid Date | Date of Service | Procedure Units | Procedure Paid | Procedure Allowed | Amount Units | Amount Paid | Amount Allowed | Error | Finding Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 002183802 | Castillejo | Isabel | 7/31/00 | 7/14/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 1 |
| 36 | 129703 | Lozada | Cesar | 9/12/00 | 8/22/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/23/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 1 |
|  |  |  |  |  | 8/15/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/29/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
| 57 | 001916630 | O'Brien | James | 10/11/00 | 8/7/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/14/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/11/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 9/21/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 9/25/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
| 58 | 001916630 | O'Brien | James | 12/12/00 | 11/28/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
| 76 | 002611973 | Shaffer | Shelley | 9/12/00 | 8/22/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/11/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/15/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/17/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/18/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/25/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |
|  |  |  |  |  | 8/28/00 | 1 | C2190Y | None | 0 | 115.16 | 0.00 | 115.16 | 3 |

**TOTAL-EXHIBIT I**  2,072.88

# EXHIBIT II
## SCHEDULE OF EXTRAPOLATED ERROR AMOUNTS
## COMMUNITY HEALTH CENTER, INC.
### 4054441

| | |
|---|---:|
| UNIVERSE: | 3,518 |
| SAMPLES SELECTED | 93 |
| SAMPLES CORRECT | 88 |
| OVERPAYMENTS | 5 |
| UNDERPAYMENTS | 0 |

**SUMMARY OF ERRORS**

| | |
|---|---:|
| CLAIMS WITH ERRORS | 5 |
| SAMPLE ERROR DOLLARS | $ 2,072.88 |
| AVG $ ERROR/OVERPAYMENT | $414.57600 |
| AVG $ ERROR/UNDERPAYMENT | $ 0.00000 |
| AVG $ ERROR/ERROR CLAIM | $414.57600 |
| AVG $ ERROR/SELECTED CLAIM | $22.289032 |

**PROJECTED ERROR**

| | |
|---|---:|
| EXTRAPOLATED ERROR AMOUNT: | $78,413.00 |
| MEDICARE ERROR AMOUNT: | 95.95 |
| | $78,508.95 |

# EXHIBIT III

## Community Health Center, Inc.

### 4054441

| Sample Number | MID | Recip | Name | Paid Date | Date of Service | Procedure Units | Procedure Paid | Procedure Allowed | Amount Units | Amount Paid | Amount Allowed | Error | Finding Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 001324052 | Curriden | Madeline | 3/30/99 | 3/16/99 | 1 | C90801 | None | 0 | 95.95 | 0.00 | 95.95 | 2 |
| | **TOTAL-EXHIBIT III** | | | | | | | | | | | 95.95 | |