FILED

2004 APR 21  A 11: 39

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMMUNITY HEALTH CENTER, INC. ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:02CV761(CFD) |
| ) | |
| PATRICIA WILSON-COKER, J.D., M.S.W., ) | |
| COMMISSIONER OF THE ) | |
| STATE OF CONNECTICUT ) | |
| DEPARTMENT OF SOCIAL SERVICES ) | |
| ) | |
| *Defendant.* ) | |
| ) | APRIL 20, 2004 |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Community Health Center, Inc. ("CHCI") here replies to defendant's Opposition to Plaintiff's Summary Judgment Motion (the "Opposition"). Defendant makes three (3) arguments in its opposition: (1) the Eleventh Amendment bars certain aspects of plaintiff's claims; (2) case managers do not generate billable visits; and (3) CHCI billed for psychotherapy services when it should not have done so. Importantly, the Opposition fails to address the crux of CHCI's arguments that irrespective of whether DSS' view that case management services do not constitute "visits" is correct, the result of CHCI's audit will still violate FQHC payment requirements. The

1

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

Affidavit of Kathleen Shaughnessy proffered by DSS fails to address CHCI's argument in this regard. Specifically, Ms. Shaughnessy's Affidavit does not address the consideration that even if a meeting with a case manager may no longer constitute a visit in the State's view, the services of the case managers, just as with services of other FQHC staff who (unlike case managers) are clearly not health care providers, remain part of the FQHC's program and overall costs, of which Medicaid must pay its statutory share.[1] Declaring case management services as other than "visits" does not reduce an FQHC's reasonable costs, since the case managers perform FQHC services which must, in part, be paid by Medicaid. Such a declaration only reduces the number of visits. If the disallowance of the case management visits is not reversed, then unless CHCI is allowed to recalculate its per-visit cost and Medicaid's share of cost (prior to January 1, 2001) based on a removal of all case management visits from the prior calculation, CHCI will be paid less than the Medicaid statute requires.

---

[1]     Under all FQHC payment provisions, payment is based on "costs . . . which are reasonable *and related* to the cost of furnishing [FQHC] services . . . since under Section 330 of the PHS Act (at 42 U.S.C. § 254b(1)(A)(iii), case management services are required to be performed, they are at least *"related"* to the cost of a health center's/FQHC's furnishing of its services.

## II. REPLY

**A.    CHCI's Claims Are Not Barred by the Eleventh Amendment
As it Seeks Prospective Injunctive Relief**

In this action, the State of Connecticut's Department of Social Services ("DSS") has violated and is violating provisions of federal law governing the Medicaid program. As a result, DSS already has improperly taken back Medicaid payments to which CHCI is legally entitled and has issued a directive under which there will be further unlawful curtailments of CHCI's reimbursement for Medicaid services. These unlawful acts stem from DSS' refusal to pay for an essential service, commonly referred to as "case management." All such losses of Medicaid payment to CHCI violate the State's responsibilities under the Medicaid statute.

In this action, CHCI requests this Court to declare defendant's refusal to reimburse CHCI for the provision of case management services unlawful, order defendant to reimburse CHCI for the costs of providing case management services and to develop CHCI's base PPS rate in such a manner that includes all Medicaid covered services provided by CHCI in fiscal years 1999 and 2000, as required by Federal law, and to enjoin defendant from taking any action that would result in CHCI not being reimbursed for the costs of providing case management services.
This Court can order such prospective injunctive relief in CHCI's favor consistent with the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S.Ct. 441 (1908) and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974).

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

**B.    DSS Is Not Reimbursing CHCI for the Cost of Case Management Services**

Nowhere in her Opposition does defendant address the fact that DSS' methodology for reimbursing CHCI as a result of its audit fails to reimburse CHCI for the cost of providing case management services to Medicaid recipients. As explained in CHCI's summary judgment motion, certain services *must* be provided by a State as a condition of its participation in the Medicaid program. 42 U.S.C. §§ 1396a(a)(10)(A). With the enactment of the Omnibus Budget Reconciliation Act ("OBRA") of 1989 (Pub.L.No. 101-239), "Federally qualified health center services . . . and *any other* ambulatory services offered by a Federally qualified health center" (emphasis added) were added to the list of these "mandatory" services. 42 U.S.C. §§ 1396d(a)(2)© and 1396a(a)(10)(A). Regarding all such Medicaid services provided by FQHCs, reimbursement by a State (under OBRA 1989) was required to be at "100 percent of costs which are reasonable *and related to* the cost of furnishing such services or based on such other tests of reasonableness, as the Secretary prescribes in [FQHC *Medicare*] regulations . . .." (Emphasis added.) 42 U.S.C. §§ 1396a(a)(13)(E), subsequently reclassified as 42 U.S.C. §§ 1396a(a)(13)©.

Although a meeting with a case manager may no longer constitute a visit in the State's view, the services of case managers, just as with services of other FQHC staff who (unlike case managers) are clearly not health care providers, remain part of the FQHC's program and overall costs, of

4

which Medicaid must pay its statutory share.[2] For this reason, declaring case management services as other than "visits" does not reduce an FQHC's reasonable costs, since the case managers perform FQHC services which must, in part, be paid by Medicaid. Such a declaration only reduces the number of visits. If the disallowance of the case management visits is not reversed, then unless CHCI is allowed to recalculate its per-visit cost and Medicaid's share of cost (prior to January 1, 2001) based on a removal of all case management visits from the prior calculation, CHCI will be paid less than the Medicaid statute requires. The Shaughnessy Affidavit proffered by defendant does not address this consideration, it simply summarizes DSS' actions and does not take into account that DSS' methodology fails to reimburse CHCI for the cost of providing case management services to Medicaid recipients. Specifically, the Shaughnessy Affidavit does not address how the cost of case management services would be reimbursed to CHCI if DSS' audit adjustment were allowed to stand.

---

[2]     Under all FQHC payment provisions, payment is based on "costs . . . which are reasonable *and related* to the cost of furnishing [FQHC] services . . . since under Section 330 of the PHS Act (at 42 U.S.C. § 254b(1)(A)(iii), case management services are required to be performed, they are at least *"related"* to the cost of a health center's/FQHC's furnishing of its services. Additionally, consistent with DSS regulations, it has been CHCI's practice to bill only those case management/medical social work services which are (1) medically necessary; (2) prescribed by an eligible licensed independent provider enrolled in the Medicaid program; (3) provided to a Medicaid enrolled person; and documented in the official medical or mental health clinical chart of the patient. SF ¶¶ 14-15.

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

It is important to keep in mind that in passing the reasonable cost reimbursement requirement for FQHCs, Congress intended to assure that the Medicaid program reimburse an FQHC for the program's fair share of the FQHC's costs of providing services to Medicaid recipients. Not only is CHCI entitled to receive reimbursement of its reasonable costs of providing FQHC services (including case management) during the audit period in question, it is also entitled to receive a PPS base rate that is developed using *all* of the reasonable costs it incurred in fiscal years 1999 and 2000 in providing Medicaid covered services. 42 U.S.C. § 1396a(aa). The PPS legislation makes clear that 100 percent of the reasonable costs incurred in fiscal years 1999 and 2000 are to be used in calculating CHCI's PPS baseline rate. By eliminating case management visits from CHCI's costs, DSS is ensuring that less than 100 percent of CHCI's reasonable costs will be used in establishing the PPS baseline. Without the relief requested herein, DSS will violate the requirement that it reimburse CHCI based on all of CHCI's reasonable costs for the audit years in question and for every year the PPS methodology is in effect. For that reason, CHCI is in need of prospective injunctive relief from this Court.

### III. <u>CONCLUSION</u>

Defendant has failed to show that summary judgment is not proper. Accordingly, DSS should be directed to include case management as a billable visit so that CHCI can receive the reimbursement to which it is entitled for such services as part of its per visit rate for 1999 and 2000 and its PPS base rate. Alternatively, DSS should be directed to correct its methodology for calculation of CHCI's per visit rates in a manner that ensures that: (1) CHCI's total case management visits are removed from the calculation of its per visit rates (and not only those case management visits provided as part of the Medicaid program), and (2) CHCI receives reimbursement for the costs of providing case management services to Medicaid recipients to ensure that the Medicaid program pays its proper share of CHCI's costs of providing such services.

Respectfully submitted,

*[signature]*

Richard R. Brown
Fed. Bar No. 00009
Brown, Paindiris & Scott
100 Pearl Street
Hartford, CT 06103
(860)522-3343 (Telephone)
(860)522-2490 (Facsimile)


and

James L. Feldesman
Kathy S. Ghiladi
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.,
Second Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

*Counsel for Plaintiff*

## CERTIFICATION

This is to certify that a copy of this document was mailed, postage prepaid on April 20, 2004, to all counsel of record including Peter Brown, Esq., Assistant Attorney General, P. O. Box 120, Hartford, Connecticut 06141-0120.

Richard R. Brown